IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

AUDENZIO AIUTO, NATHANIEL
PALMER, and CHENZERIA
WRIGHT, on behalf of themselves
and all others similarly situated,

              Plaintiff,

v.                                         Case No. 1:19-cv-04803-LMM

PUBLIX SUPER MARKETS, INC.,

              Defendant.

## PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND COURT AUTHORIZED NOTICE

# TABLE OF CONTENTS

I.    PROCEDURAL HISTORY AND PERTINENT FACTS………………… 1

    A. Procedural History………………………………………………………… 1
    B. Pertinent Facts…………………………………………………………………2
    C. The Voluminous Documentary Evidence and Declaration Testimony
       Demonstrates that DMs are Similarly Situated………………………..3
       1.  Defendant's Stores are Standardized Corporate-Wide
       2.  Publix Operates Through Centralized Corporate Office Personnel
          Pursuant to the Same Corporately Derived Policies…………………4
       3.  Publix Uniformly Classified, then Reclassified, All DMs...…………7
       4.  The Duties and Responsibilities Are the Same for All DMs…………8

II.   THIS CASE MEETS THE LENIENT FIRST STAGE STANDARD…….11
    A. Plaintiffs Satisfy the Lenient "Similarly Situated" Requirement……….12
       1.  DM Job Duties and Working Conditions Are Sufficiently Similar…12
       2.  The Company-Wide Classifications Establish Similarly Situated…..13
       3.  Company-Wide Reclassifications Establish Similarly Situated…….13
       4.  Publix Has One Job Description For Each DM Position……………15
       5.  DMs Must Adhere to the Same Corporate Guides and Policies…….16
    B. The Alleged FLSA Violation Arises from Company-wide Policies
       Affecting All of The Similarly Situated Individuals The Same
       Way…………………………………………………………………………..16
       1. Publix Uniformly Classified and Paid DMs as Exempt ……………..16
       2. Publix Underfunded Labor Budgets Increasing DM Workloads……18
       3. The DMs Must Comply With Immediate Customer Service Rules…19
    C.     Plaintiff Satisfies the Lenient "Showing of Interest" Requirement…20
    D.     Even the Undisputed Evidence Alone Is Sufficient At This Stage….21
    E.     There Is No "First-Filed" Barrier to Certification of this Action…...22

III.  THE COURT SHOULD ORDER PRODUCTION OF THE
      COLLECTIVE LIST AND ISSUANCE OF NOTICE……………………24

# TABLE OF AUTHORITIES

*Chaves v. Winn-Dixie Montgomery, LLC*,
  No. 16-1933, 2017 U.S. Dist. LEXIS 115466 (E.D. La. July 24, 2017) .......... 11

*Claiborne v. FedEx Ground Package Sys.*,
  No. 18-1698, 2019 U.S. Dist. LEXIS 168141 (W.D. Pa. Sep. 30, 2019) ......... 23

*Collegiate Licensing Co. v. Am. Cas. Co.*,
  713 F.3d 71 (11th Cir. 2013) ........................................................................... 23

*Crawford v. Refinishing Touch, Inc.*,
  No. 1:15-CV-3027-SCJ, 2016 U.S. Dist. LEXIS 182132 (N.D. Ga. July 1, 2016)
  ........................................................................................................................... 21

*Davine v. Golub Corp.*,
  No. 14-30136-MGM, 2015 U.S. Dist. LEXIS 37805 (D. Mass. Mar. 25, 2015)
  ........................................................................................................................... 12

*Florence v. Deli Mgmt.*,
  No. 1:18-cv-4303-SCJ, 2019 U.S. Dist. LEXIS 4379 (N.D. Ga. Jan. 9, 2019)
  ............................................................................................................... 16, 24, 25

*Green Tree Servicing, L.L.C. v. Clayton*,
  689 F. App'x 363 (5th Cir. 2017) ..................................................................... 22

*Griffin v. Aldi, Inc.*,
  No. 5:16-CV-354 (LEK/ATB), 2017 U.S. Dist. LEXIS 222475 (N.D.N.Y. Feb.
  22, 2017) ..................................................................................................... 12, 19

*Hazel v. Alimentation Couche-Tard*,
  No. 2:16-CV-00957-KOB, 2017 U.S. Dist. LEXIS 136744 (N.D. Ala. Aug. 25,
  2017) ................................................................................................................. 14

*Hernandez v. Cracker Barrel Old Country Store, Inc.*,
  No. 8:14-cv-1902-T-33AEP, 2014 U.S. Dist. LEXIS 146356 (M.D. Fla. Oct. 14,
  2014) ................................................................................................................. 23

*Ibea v. Rite Aid Corp.*,
  No. 11 Civ. 5260 (JSR)(HBP), 2011 U.S. Dist. LEXIS 144652 (S.D.N.Y. Dec.
  14, 2011) ........................................................................................................... 15

*Ingram v. Pfizer, Inc.*,
    No. 6:10-cv-0459-Orl-GAP-GJK, 2010 U.S. Dist. LEXIS 153973 (M.D. Fla.
    July 19, 2010) ................................................... 23

*Jones v. JRN Inc.*,
    No. 4:16-CV-141 (CDL), 2016 U.S. Dist. LEXIS 191625 (M.D. Ga. July 12,
    2016) .................................................... 17-18

*Julian v. MetLife, Inc.*,
    298 F. Supp. 3d 699 (S.D.N.Y. 2018) ............................. 14

*Koehler v. Freightquote.com, Inc.*,
    93 F. Supp. 3d 1257 (D. Kan. 2015) .............................. 1

*Kujat v. Roundy's Supermarkets, Inc.*,
    No. 18 C 5326, 2019 U.S. Dist. LEXIS 74149 (N.D. Ill. May 2, 2019) .......... 11

*Kurgan v. Chiro One Wellness Ctrs. LLC*,
    No. 10-cv-1899, 2014 U.S. Dist. LEXIS 20255 (N.D. Ill. Feb. 19, 2014) ....... 14

Magee v. Francesca's Holdings Corp., *No.*
    17- 565 (RBK/JS), 2018 U.S. Dist. LEXIS 190698 .................. 18-19

*Martin v. Budd Props.*,
    No. 7:17-CV-27(WLS), 2018 U.S. Dist. LEXIS 228211 (M.D. Ga. Apr. 27,
    2018) ....................................................... 21

*Mason v. Lumber Liquidators, Inc.*,
    No. 17-CV-4780 (MKB), 2019 U.S. Dist. LEXIS 80654 (E.D.N.Y. May 13,
    2019) ....................................................... 14

*McDermott v. Fed. Sav. Bank*,
    No. CV 14-6657 (JMA)(GRB), 2016 U.S. Dist. LEXIS 193962 (E.D.N.Y. May
    20, 2016) .................................................... 15

*McPherson v. LEAM Drilling Sys., LLC*,
    No. 4:14-CV-02361, 2015 U.S. Dist. LEXIS 40973 (S.D. Tex. Mar. 30, 2015)
    ........................................................... 17

*Meyer v. Panera Bread Co.*,
    344 F. Supp. 3d 193 (D.D.C. 2018) ......................... 12, 19

*Miller v. Fleetcor Techs. Operating Co., LLC*,
    118 F. Supp. 3d 1351 (N.D. Ga. 2015) ........................................... 14, 17, 24, 25

*Morgan v. Family Dollar Stores*,
    551 F.3d 1233 (11th Cir. 2008) ...................................... 11, 13, 16, 19

*Nerland v. Caribou Coffee Co., Inc.*,
    564 F. Supp. 2d 1010 (D. Minn. 2007) ........................................... 13

*Ott v. Publix Super Mkts., Inc.*,
    No. 3:12-0486, 2013 U.S. Dist. LEXIS 63581 (M.D. Tenn. May 3, 2013)
    ....................................................................... 4, 8, 9, 11, 12

*Page v. Hertz Corp.*,
    No. 1:12-cv-1965-WSD, 2013 U.S. Dist. LEXIS 75387 (N.D. Ga. May 29,
    2013) ................................................................... 25

*Powell v. Oldham*,
    No. 2:16-cv-2907-SHM-tmp, 2018 U.S. Dist. LEXIS 39058 (W.D. Tenn. Mar.
    9, 2018) ................................................................ 22-23

*Prowant v. Fannie Mae*,
    No. 1:14-CV-3799-AT, 2017 U.S. Dist. LEXIS 221422 (N.D. Ga. Oct. 16,
    2017) ................................................................... 25

*Ravenell v. Avis Budget Car Rental, LLC*,
    No. 08-CV-2113 (SLT) (ALC), 2010 U.S. Dist. LEXIS 72563 (E.D.N.Y. July
    19, 2010) ............................................................... 13, 17

*Riddle v. Suntrust Bank*,
    No. 1:08-CV-1411-RWS, 2009 U.S. Dist. LEXIS 8995 (N.D. Ga. Sept. 29,
    2008) ................................................................... 21

*Sellers v. Sage Software, Inc.*,
    No. 1:17-CV-03614-ELR, 2018 U.S. Dist. LEXIS 188420 (N.D. Ga. May 25,
    2018) ................................................................... 25

*Slaughter v. Caidan Mgmt. Co., LLC*,
    317 F. Supp. 3d 981 (N.D. Ill. 2018) ................................................. 14

*Smallwood v. Illinois Bell Tel. Co.*,
    710 F. Supp. 2d 746 (N.D. Ill. 2010) ................................................. 15

*Tomkins v. Amedisys, Inc.*,
    No. 3:12cv1082 (WWE), 2014 U.S. Dist. LEXIS 3660 (D. Conn. Jan. 13, 2014)
    .................................................................................................................... 17

*Vargas v. HSBC Bank USA, N.A.*,
    2012 U.S. Dist. LEXIS 113993 (S.D.N.Y. Aug. 9, 2012) ................................ 24

*Weckesser v. Knight Enters. S.E., LLC*,
    No. 2:16-cv-02053-RMG, 2019 U.S. Dist. LEXIS 14716 (D.S.C. Jan. 28, 2019)
    .................................................................................................................... 24

*Weinstein v. 440 Corp.*,
    No. 2:19-cv-105-RWS, 2019 U.S. Dist. LEXIS 190678 (N.D. Ga. Nov. 4, 2019)
    .................................................................................................................... 24

Plaintiffs Audenzio Aiuto, Nathaniel Palmer, and Chenzeria Wright, joined by the 30 Opt-In Plaintiffs who have filed Consents to join this lawsuit to date (collectively "Plaintiffs"), move for conditional certification and issuance of notice under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), on behalf of all individuals who worked as Meat, Deli, and/or Bakery Managers (collectively the "Department Manager" or "DM" positions at issue) paid by Defendant Publix Super Markets, Inc. (herein "Publix" or "Defendant") as overtime exempt at any of Defendant's locations, who worked more than 40 hours as a DM in any workweek for which workweek the DM was paid on a pay date within the period beginning three years ago and ending on the last pay date prior to Defendant's reclassification of the DM positions to hourly-paid non-exempt, which upon and information and belief became effective in April, 2019 (the "collective action"). Plaintiffs seek certification of those three subclasses each represented by a named Plaintiff: Deli Managers (by named Plaintiff Aiuto), Meat Managers (by named Plaintiff Palmer), and Bakery Managers (by named Plaintiff Wright). *See, e.g., Koehler v. Freightquote.com, Inc.*, 93 F. Supp. 3d 1257 (D. Kan. 2015) (conditionally certifying subclasses for three job titles in exemption misclassification case).

## I.    PROCEDURAL HISTORY AND PERTINENT FACTS

### A.    Procedural History

On October 24, 2019, Plaintiffs filed a Complaint against Publix for unpaid overtime under the FLSA, alleging misclassification of Deli, Bakery, and Meat Managers as overtime exempt prior to the reclassification of those DM positions to

non-exempt. *See* Complaint [Doc. 1] (herein "Complaint"). To date, the three named Plaintiffs and 32 additional individuals have joined this case by filing their Consents pursuant to 29 U.S.C. § 216(b). [Docs. 1-2, 5-1, 10-1, 12-1, 13-1, 14-1, 15-1].

    B.   <u>Pertinent Facts</u>

    Publix is a Florida corporation registered to transact business in Georgia, operating 187 stores in Georgia alone. (Complaint, ¶3).[1] Publix is one of the 10 largest-volume supermarket chains in the country with approximately 1,230 store locations in Alabama, Florida, Georgia, North Carolina, South Carolina, Tennessee, and Virginia, and has over 200,000 employees.[2] In 2018, Publix's retail sales reached $36.1 billion.[3]

    The 35 named and opt-in Plaintiffs in this case to date worked as salaried DMs paid by Publix (prior to reclassification) as overtime exempt in a total of five of the seven states in which Publix has locations. In support of this Motion, Plaintiffs submit declarations by 16 of the 35 total Plaintiffs, representing DMs who have worked in five states and over 75 different Publix locations, describing the uniform practice of misclassifying similarly situated DMs as exempt while requiring primarily non-exempt duties.[4] Publix reclassified all DM positions to hourly-paid

---

[1] *See* https://corporate.publix.com/about-publix/company-overview/facts-figures.
[2] *Id.*
[3] *Id.*
[4] *See* Decls. of Audenzio Aiuto ("Aiuto"), ¶2, Nathaniel Palmer ("Palmer"), ¶2, Chenzeria Wright ("Wright"), ¶2, Katrina Sheppard ("Sheppard"), ¶2, Mary Hall ("Hall"), ¶2, Valerie Holton ("Holton"), ¶2, Wendy Bauer ("Bauer"), ¶2, Monica Thompson ("Thompson"), ¶2, James Rodgers ("Rodgers"), ¶2, Christine Bruce

non-exempt effective on or about April 1, 2019.[5] Plaintiffs allege that Publix violated the FLSA by failing to pay all similarly situated DMs overtime pay for all hours worked in excess of 40 hours in a workweek. See Complaint at ¶1.

### C.   The Voluminous Documentary Evidence and Declaration Testimony Demonstrates that DMs are Similarly Situated

#### 1.   *Defendant's Stores are Standardized Corporate-Wide*

Publix expects its grocery stores to be operated the same company-wide in order to meet its expectations for the Publix customer experience.[6] Publix says "[c]onsistency is key" when it comes to customer-centric culture, customer insights, employee engagement, measurement, technology, and brand messaging in terms of Publix's bigger customer experience efforts.[7]

The Declarants worked as DMs at multiple stores in multiple states.[8] They were frequently transferred between stores, and even to different states, without

("Bruce"), ¶2, Allen Octavien ("Octavien"), ¶2, Brenda Fields ("Fields"), ¶2, Mary Hovell ("Hovell"), ¶2, Donald Jefferson ("Jefferson"), ¶2, Karl Roberts ("Roberts"), ¶2, and Michelle Horstman ("Horstman"), ¶2; Consents [Docs. 1-1, 5-1, 10-1].

[5]  Complaint at ¶1; Wright, ¶4, Sheppard, ¶3, Bauer, ¶3, Rodgers, ¶¶2,5, Bruce, ¶¶3,6, Fields, ¶¶2,5, Hovell, ¶¶2,5, Roberts, ¶4.

[6] Aiuto, ¶4, Palmer, ¶4, Wright, ¶7, Sheppard, ¶5, Hall, ¶4, Holton, ¶4, Bauer, ¶6, Thompson, ¶4, Rodgers, ¶4, Bruce, ¶5, Octavien, ¶4, Fields, ¶4, Hovell, ¶5, Jefferson, ¶4, Roberts, ¶6, and Horstman, ¶4.

[7] *See* interview with Publix's Director of Media & Community Relations: https://loyalty360.org/content-gallery/daily-news/creating-customer-engagement-win-at-publix.

[8] Aiuto, ¶2, Palmer, ¶2, Wright, ¶2, Sheppard, ¶2, Hall, ¶2, Holton, ¶2, Bauer, ¶2, Thompson, ¶2, Rodgers, ¶2, Bruce, ¶2, Octavien, ¶2, Fields, ¶2, Hovell, ¶2, Jefferson, ¶2, Roberts, ¶2, and Horstman, ¶2.

needing any location-specific training or re-training to do the DM same job at different locations.[9] They were also subject to centralized training by Publix, attended store and district-wide meetings with other DMs, and attended classes at Publix's corporate headquarters with other DMs.[10] All of these experiences provided personal knowledge that employees in DM positions throughout Publix are similarly situated, with basically the same job duties and responsibilities.

 2. *Publix Operates Through Centralized Corporate Office Personnel Pursuant to the Same Corporately Derived Policies*

Publix maintains one employee handbook applicable to all employees,[11] makes corporate-issued training, reference, Managers Reference Library ("MRL") (including "Job Classification System" and "Compensation" sections), and department-specific Reference and Procedures Guide documents (setting company-wide required standards) available to its DMs, and puts newly promoted department managers through centralized training programs.[12] Publix also submitted evidence in

---

[9] Aiuto, ¶4, Palmer, ¶4, Wright, ¶7, Sheppard, ¶5, Hall, ¶4, Holton, ¶4, Bauer, ¶6, Thompson, ¶4, Rodgers, ¶4, Bruce, ¶5, Octavien, ¶4, Fields, ¶4, Hovell, ¶5, Jefferson, ¶4, Roberts, ¶6, and Horstman, ¶4.

[10] Aiuto, ¶¶3,11, Palmer, ¶¶3,11, Wright, ¶¶6,12, Sheppard, ¶7, Hall, ¶3, Holton, ¶4, Bauer, ¶5, Thompson, ¶3, Rodgers, ¶3, Bruce, ¶4, Octavien, ¶3, Fields, ¶3, Hovell, ¶4, Jefferson, ¶3, Roberts, ¶5, and Horstman, ¶3.

[11] *Ott v. Publix Super Mkts., Inc.*, No. 3:12-0486, 2013 U.S. Dist. LEXIS 63581, at *3 (M.D. Tenn. May 3, 2013) (certifying company-wide DM collective where all employees "are provided with the same employee handbook regardless of store location"); *see also* Aiuto, ¶11, Palmer, ¶11, Wright, ¶12, Sheppard, ¶12, Hall, ¶11, Holton, ¶12, Bauer, ¶13, Thompson, ¶11, Rodgers, ¶11, Bruce, ¶14, Octavien, ¶11, Fields, ¶12, Hovell, ¶14, Jefferson, ¶11, Roberts, ¶15, and Horstman, ¶11.

[12] Declaration of Tracy McClellan filed in *Ott* ("McClellan"), ¶ 9-12 [Doc. 67];

*Ott* admitting that "[e]ach supermarket is led by a Store Manager and an Assistant Store Manager."[13]

Publix's centralized corporate departments and operations provide additional evidence that all DMs are similarly constrained by Publix's centralized policies, standards, and requirements, and are similarly relieved of true "management" duties because the main human resources, compensation, purchasing, and other major "management"-type work is uniformly performed by Publix corporate personnel rather than at the local store level.[14]

As but some of many examples of how those functions are centralized, controlled, and performed by corporate headquarters, the Compensation team sets pay scales and "maintains internal equity among jobs by applying a systematic job valuation method to job documentation"; the Human Resources team defines

---

Defendant's SMF filed in *Ott*, ¶¶ 26-27 [Doc. 98]; *see also* Aiuto, ¶11, Palmer, ¶11, Wright, ¶12, Sheppard, ¶12, Hall, ¶11, Holton, ¶12, Bauer, ¶13, Thompson, ¶11, Rodgers, ¶11, Bruce, ¶14, Octavien, ¶11, Fields, ¶12, Hovell, ¶14, Jefferson, ¶11, Roberts, ¶15, and Horstman, ¶11.

[13] McClellan, at ¶ 2.

[14] Publix corporate employs 3,000 personnel in its Benefits, Corporate Purchasing, Facilities, Finance, Human Resources, Information Technology, Legal & Risk Management, Loss Prevention, Marketing, Public Affairs, Real Estate, and Strategy Support major departments, at its corporate headquarters in Lakeland and divisional offices in Atlanta, Charlotte, Jacksonville, and Miami. https://corporate.publix.com/careers/support-areas/corporate; https://corporate.publix.com/careers/support-areas/corporate/departments; *see also* Aiuto, ¶12, Palmer, ¶13, Wright, ¶13, Sheppard, ¶13, Hall, ¶12, Holton, ¶13, Bauer, ¶14, Thompson, ¶12, Rodgers, ¶12, Bruce, ¶15, Octavien, ¶12, Fields, ¶14, Hovell, ¶15, Jefferson, ¶12, Roberts, ¶16, and Horstman, ¶12.

standards, directs initiatives, provides field support to all stores, and surveys every

Publix associate annually; its Policies and Procedures Specialists publish Human

Resources policies for all of its business units in the associate handbook or MRL,

without which "[its] company policies wouldn't be as clear, as consistent or as well-

publicized"; its Training Developers create training programs for associates and

managers, including "reference guides, facilitator guides, student workbooks,

computer-based training courses, videos, posters, and job aids"; its Training

Specialists "travel[] to the five states where Publix operates to provide convenient

locations for [its] managers to attend training"; and its Retail Staffing Specialists

recruit associates, "serve as consultants to Regional Directors, District Managers

and Store Managers," and "help the company design training for that group [of

Regional Directors, District Managers, and Store Managers]." Declaration of

Bethany Hilbert ("Hilbert"), ¶2, Ex. 1. As yet another example, Publix corporate

(not DMs) selects its suppliers and vendors, negotiates purchasing contracts, and

sets company-wide policies and guidelines for its suppliers.[15]

---

[15] *See* Publix's "Retail Product Supplier" website page,
https://corporate.publix.com/business/publix-business-connection/retail-product-
supplier: "Our Corporate Purchasing department evaluates each item presented to
determine whether or not it should be added to our mix."; Publix's "Supplier
Policies & Guidelines" (published 07/19/18),
https://corporate.publix.com/business/publix-business-connection/retail-product-
supplier/-/media/7277D76BEE3E4DC4B83A6F7BB298EB95.ashx ("These
Supplier Policies & Guidelines (SP&Gs) have been established to
create consistency [and] increase efficiency"; "A Supplier must never…attempt to
circumvent the Primary Publix Contact"; "Our customers expect all products within

All hiring and promotion is highly centralized: applicants for non-management and management jobs alike may only apply through Publix's online Talent Application Gateway.[16] And to maintain uniformity of its DM positions, Publix "promote[s] from within to fill…most Department Manager positions," requiring external candidates with extensive experience to be hired into positions leading to management "making them eligible to be considered for management positions in as little as six months."[17]

The "Maintaining the Publix Culture" corporate website page shows that training is provided (i) by on-the-job training from department experts or store managers, (ii) in computer training available in-store, and (iii) at workshops with peers, at various locations, including training as specific as "how to use a particular knife to cut meat or in what order ingredients should be placed on bread."[18]

### 3.    *Publix Uniformly Classified, Then Reclassified, All DMs*

Publix internally classified and paid all DMs as salaried but exempt from the overtime pay requirements of the FLSA until it reclassified the DM positions as

---

our stores to be stocked in a clean, organized, and consistent manner"; "Publix operates planogram (POG) implementation teams…"; Aiuto, ¶12, Palmer, ¶12, Wright, ¶13, Sheppard, ¶13, Hall, ¶12, Holton, ¶13, Bauer, ¶14, Thompson, ¶12, Rodgers, ¶12, Bruce, ¶15, Octavien, ¶12, Fields, ¶13, Hovell, ¶15, Jefferson, ¶12, Roberts, ¶16, and Horstman, ¶12.

[16] https://corporate.publix.com/careers/stores/non-management; https://corporate.publix.com/careers/stores/management.

[17] https://corporate.publix.com/careers/stores/management.

[18] https://corporate.publix.com/careers/stores/training.

hourly-paid non-exempt effective on or about April 1, 2019.[19] Plaintiffs allege that Publix classified all DMs as exempt nationwide without conducting a person-by-person analysis and without considering any individual factors such as location, sales volume, or restaurant size. *See* Complaint at ¶¶14-15. Nor did Publix conduct a person-by-person analysis or consider individual factors such as location, sales volume, or restaurant size when reclassifying the DM positions to non-exempt effective April, 2019. *Id.*, at ¶16. During the period Publix classified the DMs as exempt, they were regularly scheduled to work (and did in fact work) more than 40 hours in a work week without receiving overtime premiums for those hours.[20]

The main job duties and responsibilities of the DM positions generally did not change when DMs were reclassified from exempt to non-exempt in 2019.[21]

4.   *The Duties and Responsibilities Are the Same for All DMs*

DMs were similarly situated in terms of being scheduled to work overtime hours without receiving overtime premiums for their overtime hours worked. Publix's company-wide reclassification notification acknowledged that all DMs' scheduled work hours had been "a minimum 50-hour week" but would now be

---

[19] Aiuto, ¶6, Palmer, ¶6, Wright, ¶4, Sheppard, ¶3, Hall, ¶6, Holton, ¶6, Bauer, ¶3, Thompson, ¶5, Rodgers, ¶¶2,5, Bruce, ¶¶3,6, Octavien, ¶6, Fields, ¶¶2,5, Hovell, ¶¶3,6, Jefferson, ¶6, Roberts, ¶8 and Horstman, ¶6.

[20] Aiuto, ¶5, Palmer, ¶5, Wright, ¶4, Sheppard, ¶6, Hall, ¶5, Holton, ¶5, Bauer, ¶7, Thompson, ¶5, Rodgers, ¶5, Bruce, ¶6, Octavien, ¶5, Fields, ¶5, Hovell, ¶6, Jefferson, ¶5, Roberts, ¶7, and Horstman, ¶5.

[21] Wright, ¶5, Sheppard, ¶3, Bauer, ¶3, Rodgers, ¶2, Bruce, ¶3, Fields, ¶2, Roberts, ¶4, and Hovell, ¶3.

reduced to "a target of 47.5 hours" upon reclassification. Hilbert, ¶3, Ex. 2. DMs routinely worked more than that 50 hour target, without receiving overtime premiums.[22]

DMs are also similarly situated in terms of their DM duties company-wide. For instance, Plaintiffs demonstrate that the DMs throughout multiple different states and store locations performed similar tasks.[23] Further, Publix's own determination, in its recent company-wide reclassification of DMs to hourly-paid, of a specific amount of time that all DMs should be scheduled to work each week to fulfill their job duties and responsibilities (reducing DMs' weekly scheduled hours targets from a minimum of 50 to 47.5) clearly indicates that the DM duties and responsibilities are substantially similar company-wide. Hilbert, ¶3, Ex. 2. And although ultimately a merits point, and thus beyond the scope of the present motion at the lenient notice stage, the testimony shows that DMs are similarly situated in that their main job duties primarily involve performance of work similar to that performed by hourly-paid associates, not in an office, frequently involving manual labor, constituting the majority of their working time as DMs.[24]

---

[22] Aiuto, ¶9, Palmer, ¶9, Wright, ¶10, Sheppard, ¶¶8,10, Hall, ¶¶7,9, Holton, ¶¶7,10, Bauer, ¶¶9,11, Thompson, ¶¶7,9, Rodgers, ¶7, Bruce, ¶¶8,12, Octavien, ¶¶7,9, Fields, ¶9, Hovell, ¶¶8,12, Jefferson, ¶¶7,9, Roberts, ¶¶9,13, and Horstman, ¶¶7,9.
[23] Aiuto, ¶6, Palmer, ¶6, Wright, ¶7, Sheppard, ¶¶4,7, Hall, ¶6, Holton, ¶6, Bauer, ¶8, Thompson, ¶6, Rodgers, ¶6, Bruce, ¶¶4-5, Octavien, ¶6, Fields, ¶6, Hovell, ¶4, Jefferson, ¶6, Roberts, ¶8, and Horstman, ¶¶3,6.
[24] Palmer, ¶7, Wright, ¶9, Sheppard, ¶9, Hall, ¶8, Holton, ¶9, Bauer, ¶10, Thompson, ¶8, Rodgers, ¶8, Bruce, ¶10, Octavien, ¶8, Fields, ¶7, Hovell, ¶10,

Plaintiffs also present evidence that a unifying reason that the DMs spent the majority of their time performing the same job duties as the hourly associates is because of Defendant's company-wide policies of discouraging or disallowing hourly associates from working overtime and keeping labor budgets low.[25] In scheduling hourly associates, the DMs were required to stay within the labor hours allotted by the Oasis scheduling system, which often meant that there were not enough hourly associates working to do all of the food preparation, cleaning, stocking, customer service, and other job tasks required to maintain Defendant's expectations for customer service, so DMs had to cover all of the hours that could not be scheduled for hourly associates and do the job tasks that hourly associates would have done if allowed to work enough shift hours.[26] Publix's recent

---

Jefferson, ¶8, Roberts, ¶11, and Horstman, ¶8. Likewise, Plaintiffs assert that the DMs' primary job duties did not involve managing the store or any department, or exercising independent discretionary judgment on significant matters. For example, DMs couldn't decide how many hours hourly associates should be allowed to work, they had no involvement in setting the budget that affected their department, they couldn't decide what to pay employees, and they had to follow all of the strict corporate policies, guidelines, manuals, plan-o-grams, and other instructions that largely dictated how to do their job, among other constraints. Aiuto, ¶12, Palmer, ¶13, Wright, ¶13, Sheppard, ¶13, Hall, ¶12, Holton, ¶13, Bauer, ¶14, Thompson, ¶12, Rodgers, ¶12, Bruce, ¶15, Octavien, ¶12, Fields, ¶14, Hovell, ¶15, Jefferson, ¶12, Roberts, ¶16, and Horstman, ¶12.. DMs did not have authority to hire or fire unilaterally, they did not get to choose which vendors to buy product from, what to pay them, what to charge customers, how to display products in their department, or make any other decisions regarding how to manage their department. *Id.*

[25] Aiuto, ¶10, Palmer, ¶10, Wright, ¶11, Sheppard, ¶11, Hall, ¶10, Holton, ¶11, Bauer, ¶12, Thompson, ¶10, Rodgers, ¶10, Bruce, ¶13, Octavien, ¶10, Fields, ¶10, Hovell, ¶13, Jefferson, ¶10, Roberts, ¶14, and Horstman, ¶10.

[26] *Id.*

reclassification notification also impliedly admits that reclassifying DMs to exempt while changing Assistant Department Managers ("ADMs") from fluctuating workweek-paid to hourly-paid in December 2014, and in so doing reducing all ADMs' target/scheduled work hours company-wide, caused DMs to have to fill the same gaps of the same necessary non-exempt duties that were previously being performed by ADMs before their hours were universally reduced: "Since we made the change for assistant department managers to be paid hourly and reduced their target hours from 50 to 45, we have received feedback that this has increased time demands on our department managers, and this was not intended when we made that change." Hilbert, ¶3, Ex. 2.

## <u>ARGUMENT AND CITATION OF AUTHORITY</u>

## II.   **THIS CASE MEETS THE LENIENT FIRST STAGE STANDARD**

This motion plows no new ground. Grocery and retail chain mid-level or lower-level "manager" misclassification cases are well-suited for collective action treatment, and courts routinely grant motions to conditionally certify company-wide lower-level "manager" misclassification cases like this one.[27]

Indeed, a court conditionally certified a company-wide collective action

---

[27] *See, e.g., Morgan v. Family Dollar Store*s, 551 F.3d 1233 (11th Cir. 2008) (affirming district court's second stage <u>denial of decertification</u> for retail store Assistant Managers company-wide); *Kujat v. Roundy's Supermarkets, Inc.*, No. 18 C 5326, 2019 U.S. Dist. LEXIS 74149, at *14 (N.D. Ill. May 2, 2019) (conditionally certifying grocery store chain department manager misclassification case company-wide); *Chaves v. Winn-Dixie Montgomery, LLC*, No. 16-1933, 2017 U.S. Dist. LEXIS 115466 (E.D. La. July 24, 2017) (conditionally certifying grocery store mid-level manager FLSA misclassification claims company-wide).

challenging Publix's previously applicable fluctuating workweek overtime pay plan for Department Managers and Assistant Department Managers during the time before their 2014 reclassification to salaried exempt in *Ott v. Publix Super Mkts., Inc.*, No. 3:12-0486, 2013 U.S. Dist. LEXIS 63581 (M.D. Tenn. May 3, 2013) ("*Ott*"), over Publix's objections that the overtime-eligible positions were actually FLSA exempt and therefore individualized exemption defenses should preclude collective treatment.

The factual record supporting this motion meets, and indeed far exceeds, that which the overwhelming majority of district court opinions have held sufficient at the lenient first stage for conditional certification of customer service "manager"-titled misclassification cases.[28]

A. Plaintiffs Satisfy the Lenient "Similarly Situated" Requirement

   1. *DM Job Duties and Working Conditions Are Sufficiently Similar*

As demonstrated by the evidence cited above, until the reclassification (1) Publix had a blanket policy classifying all DMs as exempt employees, (2) the DMs had similar job duties and worked under similar conditions, which were the result of company-wide policies and decisions that universally affected all DMs, (3) the DMs

---

[28] *See, e.g., Griffin v. Aldi, Inc.*, No. 5:16-CV-354 (LEK/ATB), 2017 U.S. Dist. LEXIS 222475 (N.D.N.Y. Feb. 22, 2017) (conditionally certifying company-wide collective of all Store Managers for nationwide grocery chain); *Davine v. Golub Corp.*, No. 14-30136-MGM, 2015 U.S. Dist. LEXIS 37805 (D. Mass. Mar. 25, 2015) (conditionally certifying company-wide collective of grocery store mid-level managers alleging misclassification as exempt); *Meyer v. Panera Bread Co.*, 344 F. Supp. 3d 193 (D.D.C. 2018) (conditionally certifying exempt misclassification claims for all restaurant chain Assistant Managers).

were routinely required (and scheduled) to work over forty hours per week, and (4) the DMs were not paid overtime wages when they worked overtime hours.

### 2. The Company-Wide Classifications Establish Similarly Situated

Publix's company-wide classification decision establishes that even Publix considered all DMs similarly situated. Plaintiffs allege that Publix's exemption decisions were made and applied on a company-wide basis without regard to any alleged variations in store size, sales volume, region, district, or hiring and firing authority. (Complaint, ¶¶14-15); *see, e.g., Morgan*, 551 F.3d at 1263 (affirming denial of <u>decertification</u> at second stage where "even Family Dollar perceived no such distinction [between store managers company-wide]" because "it exempted all store managers from overtime pay requirements without regard to store size, sales volume, region, district, or hiring and firing authority.").[29]

### 3. Company-Wide Reclassifications Establish Similarly Situated

Publix further demonstrated that all DMs were similarly situated by making the blanket decisions (i) to reclassify all DMs from non-exempt to exempt in December 2014 while simultaneously reducing targeted scheduled hours for all

---

[29] *Accord, e.g., Ravenell v. Avis Budget Car Rental, LLC*, No. 08-CV-2113 (SLT) (ALC), 2010 U.S. Dist. LEXIS 72563, at *12 (E.D.N.Y. July 19, 2010) (defendant's opposition that plaintiff's claims cannot be assessed collectively "is inconsistent with Avis's blanket policy broadly classifying all shift managers as exempt."); *Nerland v. Caribou Coffee Co., Inc.*, 564 F. Supp. 2d 1010, 1024 (D. Minn. 2007) ("The Court finds it disingenuous for Caribou, on one hand, to collectively and generally decide that all store managers are exempt from overtime compensation without any individualized inquiry, while on the other hand, claiming the plaintiffs cannot proceed collectively to challenge the exemption.").

Assistant Department Managers upon changing their overtime pay from fluctuating workweek half-time to time-and-a-half, and (ii) to reclassify all DMs to non-exempt, effective April 2019. A company-wide decision to reclassify a position from exempt to non-exempt is itself evidence that the employees in the position are similarly situated because the employer collectively treated all employees in the position as similarly situated. *See, e.g., Miller v. Fleetcor Techs. Operating Co., LLC*, 118 F. Supp. 3d 1351, 1355 (N.D. Ga. 2015) (denying *motion for decertification* because collectively classifying position as exempt then reclassifying to non-exempt shows defendant viewed their jobs similarly); *see also Hazel v. Alimentation Couche-Tard*, No. 2:16-CV-00957-KOB, 2017 U.S. Dist. LEXIS 136744, at *10-11 (N.D. Ala. Aug. 25, 2017) (conditionally certifying nationwide collective where "Circle K's decision to reclassify its Store Managers was a nationwide action …").[30]

Courts have long recognized that, at the lenient conditional certification stage, a common policy or plan to reclassify employees from exempt to non-exempt was

---

[30] *See also Mason v. Lumber Liquidators, Inc.*, No. 17-CV-4780 (MKB), 2019 U.S. Dist. LEXIS 80654, at *25 n.13 (E.D.N.Y. May 13, 2019) ("defendant's wholesale reclassification of [Store Managers in Training] demonstrates that those employees were subject to a common policy and suggests that SMITs are similarly situated."); *Slaughter v. Caidan Mgmt. Co., LLC*, 317 F. Supp. 3d 981, 991 (N.D. Ill. 2018) (reclassification "to non-exempt status does provide some evidence of a common policy affecting plaintiffs and putative notice recipients."); *Julian v. MetLife, Inc.*, 298 F. Supp. 3d 699, 704 (S.D.N.Y. 2018) ("an employer's treatment of a particular group of employees collectively -- initially classifying them as exempt and now as non-exempt — 'militates strongly in favor of granting certification'…") (citations omitted); *Kurgan v. Chiro One Wellness Ctrs. LLC*, No. 10-cv-1899, 2014 U.S. Dist. LEXIS 20255, at *12 (N.D. Ill. Feb. 19, 2014) (uniform classification as exempt then reclassification to non-exempt supports conditional certification).

"*far more important than any similarities or dissimilarities regarding the nuts and bolts of the employees' day-to-day duties*." *Smallwood v. Illinois Bell Tel. Co.*, 710 F. Supp. 2d 746, 752 (N.D. Ill. 2010) (emphasis added). It is not just supporting evidence – it is *compelling* evidence of similarly situated status. *Ibea v. Rite Aid Corp.*, No. 11 Civ. 5260 (JSR)(HBP), 2011 U.S. Dist. LEXIS 144652, at *6-7 (S.D.N.Y. Dec. 14, 2011) ("The defendant's uniform [classification then reclassification] of CMs is *compelling evidence* that defendant itself believed there are similarities among the relevant work performed by CMs. [Cit.]") (emphasis added). So too was the 2014 blanket decision to reclassify fluctuating workweek-paid DMs to salaried exempt. *See, e.g., McDermott v. Fed. Sav. Bank*, No. CV 14-6657 (JMA)(GRB), 2016 U.S. Dist. LEXIS 193962, at *12 (E.D.N.Y. May 20, 2016) (granting conditional certification where plaintiff demonstrated "evidence of an alleged nationwide policy,…[where] defendants reclassified several outside sales loan officers to exempt[,…]")

### 4. *Publix Has One Job Description For Each DM Position*

Publix uses one job description for each of the Bakery Manager, Deli Manager, and Meat Manager positions, regardless of any variations in store size, sales volume, or location. *See Ott*, [ECF 116], PageID#s 3325-26, 3384 (Publix's MRL contains uniform job descriptions); *see, e.g., Morgan*, 551 F.3d at 1245 (plaintiffs demonstrated defendant used the same job description company-wide); *Florence v. Deli Mgmt.*, No. 1:18-cv-4303-SCJ, 2019 U.S. Dist. LEXIS 4379, at *5 (N.D. Ga. Jan. 9, 2019) (plaintiff met her minimal burden by showing all assistant managers

"shared the same job description throughout all regions").

### 5. *DMs Must Adhere to the Same Corporate Guides and Policies*

As shown in the facts section above, DMs were subject to the same corporate-wide training, policies, and procedures, and are required to adhere to the same corporate-issued policies, guidelines and instructions. *See, e.g., Florence*, 2019 U.S. Dist. LEXIS 4379, at *6 (minimal burden met where all managers were "subject to the same corporate-wide training, policies, and procedures.").

### B. The Alleged FLSA Violation Arises from Company-wide Policies Affecting All of The Similarly Situated Individuals The Same Way

Plaintiffs demonstrate not only that the DMs were sufficiently similarly situated at the lenient notice stage, but that the alleged FLSA violation arises and applied company-wide affecting all similarly situated DMs the same way.

### 1. *Publix Uniformly Classified and Paid DMs as Exempt*

It is relevant to both the similarly situated and the common violation analysis that on a company-wide basis, Publix reclassified all DMs from fluctuating workweek-paid non-exempt to salaried FLSA exempt in December, 2014, then reclassified them again from salaried FLSA exempt to hourly-paid non-exempt effective approximately April, 2019. This uniform exemption classification decision caused DMs not to receive the overtime premiums they were owed under the FLSA.[31] Even at the more stringent decertification stage, that blanket exempt

---

[31] *See, e.g., McPherson v. LEAM Drilling Sys., LLC*, No. 4:14-CV-02361, 2015 U.S. Dist. LEXIS 40973, at *9 (S.D. Tex. Mar. 30, 2015) (granting conditional

classification constitutes a single, unifying FLSA violating policy or plan warranting collective treatment in the Eleventh Circuit.

There is no doubt that Plaintiffs have similar job responsibilities and work structure. "The fact that Defendant classified them collectively as exempt and then again collectively as non-exempt shows that Defendant also views their jobs similarly." *Miller*, 118 F. Supp. 3d at 1355 (denying motion for <u>decertification</u> of company-wide misclassification case: "Clearly, the issue of whether Defendant improperly classified Plaintiffs' positions as "exempt" prior to [reclassification] is capable of collective determination for the same reasons as the court found a collective action proper in *Morgan*."); *see also Jones v. JRN Inc.*, No. 4:16-CV-141 (CDL), 2016 U.S. Dist. LEXIS 191625, at *15-16 (M.D. Ga. July 12, 2016) (conditionally certifying a collective where company-wide exempt classification of restaurant managers presented a common violation resulting in unpaid overtime).

### 2. *Publix Underfunded Labor Budgets Increasing DM Workloads*

Plaintiffs, however, do not rest on the exemption classification decision alone. Plaintiffs also present evidence that DMs were required to perform primarily non-exempt duties due to underfunded labor budgets and top-down corporate policies

---

certification where defendants reclassified putative collective members to non-exempt and began paying overtime); *Tomkins v. Amedisys, Inc.*, No. 3:12cv1082 (WWE), 2014 U.S. Dist. LEXIS 3660, at *7 (D. Conn. Jan. 13, 2014) (granting certification where proposed class were all classified as exempt then reclassified to non-exempt); *Ravenell*, 2010 U.S. Dist. LEXIS 72563, at *11-12 (conditionally certifying collective action of all shift managers company-wide, because "[t]hey have alleged a common policy that deprived them of overtime compensation through an erroneous employment classification.").

prohibiting scheduling of sufficient hourly associate hours. *See* Section I.C.4, <u>supra</u>. Publix's company-wide announcement of the reclassification of DM positions to non-exempt even acknowledges its awareness that "[i]n recent years, the responsibilities and time demands of your [DM] position have evolved," due in part to reducing hourly-paid assistant department manager work hours: "Since we made the change for assistant department managers to be paid hourly and reduced their target hours from 50 to 45, we have received feedback that this has increased time demands on our department managers, and this was not intended when we made that change." Hilbert, ¶3, Ex. 2.

Such evidence meets and exceeds the lenient standard for conditionally certifying a misclassification collective action because all DMs were denied overtime in the same way. *See, e.g., Magee v. Francesca's Holdings Corp.*, No. 17-565 (RBK/JS), 2018 U.S. Dist. LEXIS 190698, at *3-4 (D.N.J. Nov. 6, 2018) (conditionally certifying company-wide Store Manager misclassification case on plaintiff's evidence that defendants "purposefully underfunded store labor budgets to avoid paying overtime compensation to Store Managers for performing non-exempt duties over the forty-hour workweek."); *Meyer v. Panera Bread Co.*, 344 F. Supp. 3d 193, 203 (D.D.C. 2018) (conditionally certifying company-wide manager misclassification case where plaintiffs "linked the performance of these non-managerial duties to a corporate policy of strictly controlling labor costs."); *Griffin*, 2017 U.S. Dist. LEXIS 222475, at *15 (certifying grocery store managers where plaintiffs alleged common plan that Aldi's focus on controlling labor costs resulted

in store managers working beyond their scheduled hours "doing manual labor that could otherwise be performed by non-exempt employees."); *see also Morgan*, 551 F.3d at 1255-56  (because store managers could not schedule hourly staff for overtime, they routinely worked overtime to have enough floor coverage during store hours and to complete the required manual labor).

      *3.  The DMs Must Comply With Immediate Customer Service Rules*

Bakery, Deli, and Meat Managers all share one additional common thread supporting collective action certification: each position requires serving customers, including taking and filling orders to fulfill customer requests and walking guests to help find their requested grocery items – and DMs are not allowed to decide to simply ignore customers who need greeting and service in order to instead hide out in an office somewhere engaging in purportedly "management"-type duties.[32]

C.    <u>Plaintiff Satisfies the Lenient "Showing of Interest" Requirement</u>

Plaintiffs each represent their respective positions, joined by 32 additional

---

[32] Publix has company-wide "10-Foot and 10-Second Rules" that require all employees (including DMs) to interact with customers within ten seconds of their arrival in the store department, and speaking to and smiling at any person within ten feet. *See* Employee Handbook filed in *Ott*, [Doc. 33-1, PageID # 532] (which also requires: "always give the customer your complete attention."); https://robins.richmond.edu/documents/cases/Publix.pdf (p.3, citing 2017 Associate Handbook, 1-3). According to its most recent 10-k filing with the SEC, "[t]he Company's operations tend to be more labor intensive than some of its competitors primarily due to the additional customer service offered in its supermarkets." https://www.sec.gov/Archives/edgar/data/81061/000008106119000010/publix-10kx12292018.htm; *see also* Aiuto, ¶8, Palmer, ¶8, Bruce, ¶11, Fields, ¶8, Roberts, ¶12, and Hovell, ¶11.

individuals who worked in those positions who have filed Opt-In Consents to date.[33] Even just the 16 declarants (out of 35 Plaintiffs to date) have worked in approximately 50 store locations in five states, representing proof of interest from the declarants alone who worked in approximately 4% of Publix's stores[34] and from over 71% of the states in which Publix does business. Their in-store experience observing, working with, and/or training with other DMs reflects an even more expansive scope of personal knowledge when considering that the Plaintiffs and opt-ins had personal observations and work interactions with other DMs throughout their employment. Therefore, they know that the other DMs at these additional stores are also similarly situated.[35] This constitutes a significant and sufficient showing of interest at the lenient notice stage in this judicial district.[36]

   D.   Even the Undisputed Evidence Alone Is Sufficient At This Stage

   Publix may attempt to dispute certain factual allegations, but at the notice stage, the Court does not resolve factual disputes. *See, e.g., Martin v. Budd Props.*,

---

[33] Opt-In Plaintiffs' Consents [Docs. 1-1, 5-1, 10-1, 12-1, 13-1, 14-1, 15-1].

[34] Because only approximately one-half of the opt-in plaintiffs have submitted declarations in support of this Motion, the proof of interest shown by all 35 Plaintiffs joining the lawsuit to date is obviously much higher.

[35] Aiuto, ¶6, Palmer, ¶6, Wright, ¶4, Sheppard, ¶3, Hall, ¶6, Holton, ¶6, Bauer, ¶3, Thompson, ¶5, Rodgers, ¶¶2,5, Bruce, ¶¶3,6, Octavien, ¶6, Fields, ¶¶2,5, Hovell, ¶¶3,6, Jefferson, ¶6, Roberts, ¶8, and Horstman, ¶6.

[36] *See, e.g., Destin v. World Financial Group, Inc.*, No. 1:13-CV-01092-CAP [Doc. 197] (N.D. Ga. Feb. 11, 2015) (7 opt-ins from 4 states sufficient for company-wide collective certification for 340,000 allegedly misclassified associates); *Riddle v. Suntrust Bank*, No. 1:08-CV-1411-RWS, 2009 U.S. Dist. LEXIS 8995, at *3 (N.D. Ga. Sept. 29, 2008) (3 opt-ins (collectively representing 3 facilities in 3 states) sufficient for conditional certification covering 1700 locations).

No. 7:17-CV-27(WLS), 2018 U.S. Dist. LEXIS 228211, at *12 (M.D. Ga. Apr. 27, 2018). And "[m]ore important [for certification] than the[] disputed facts are the facts that are undisputed." *Crawford v. Refinishing Touch, Inc.*, No. 1:15-CV-3027-SCJ, 2016 U.S. Dist. LEXIS 182132, at *7 (N.D. Ga. July 1, 2016).

Publix admits that it classified all Meat, Deli, and Bakery Managers as exempt during the relevant period, that Plaintiffs worked overtime hours without receiving overtime pay, that Plaintiffs' duties included manual labor, and that "each [DM] was trained to perform the duties necessary to his or her respective role." (Answer [Doc. 16], ¶ 8, p. 4; ¶ 2, p. 8; ¶ 11, p. 11; ¶ 14, p. 12). It is undisputed that there was one job description for each of the three positions at issue; that DMs receive centralized corporate training, must follow provided checklists, plan-o-grams, guidelines, and Manager's Resource Library instructions and materials that dictate how their duties must be performed; and that DMs were regularly scheduled to work (and did, in fact, work) overtime hours while classified as exempt. That undisputed evidence alone warrants conditional certification.

E.    There Is No "First-Filed" Barrier to Certification of this Action

Plaintiffs' civil cover sheet filed in this action noted *Walton v. Publix Supermarkets (sic), Inc.*, No. 1:19-cv-04466-LMM, filed October 3, 2019, as a pending related action. Plaintiffs here seek certification of a limited, focused collective action: Deli, Bakery, and Meat Managers paid as salaried exempt. Plaintiffs in the *Walton* case, who worked only as Deli Managers or Bakery Managers, have amended their pleadings and motions multiple times in an attempt

to expand the collective action pled from one encompassing only Bakery and Deli Managers within the State of Georgia. Although Plaintiffs in *Walton* filed and keep modifying an ever-changing conditional certification motion, this Court extended Publix's deadline for responding, and there is no currently competing certified collective action. Nor is there a pending motion to dismiss or transfer venue.

There is no "first-filed" rule applicable here, and no "first-filed" bar to conditionally certifying this collective action in this case.

First, the "first-filed" rule only applies to actions filed in different districts. It does not even apply where, as here, the two cases are pending in the same court before the same judge. *See, e.g., Green Tree Servicing, L.L.C. v. Clayton*, 689 F. App'x 363, 367-68 (5th Cir. 2017) (first-to-file rule limited to different judges or different districts); *Powell v. Oldham*, No. 2:16-cv-2907-SHM-tmp, 2018 U.S. Dist. LEXIS 39058, at *12 (W.D. Tenn. Mar. 9, 2018) ("Courts generally decline to apply the first-to-file rule when the two actions are actively pending before the same judge," collecting cases); *see generally Collegiate Licensing Co. v. Am. Cas. Co.*, 713 F.3d 71, 78 (11th Cir. 2013) (first-to-file rule applies "when parties have instituted competing or parallel litigation *in separate courts*") (emphasis added).

Second, unlike the issues raised by a motion to transfer or dismiss, the existence of a prior filed action does not bar collective action certification at the lenient notice stage. *See, e.g., Claiborne v. FedEx Ground Package Sys.*, No. 18-1698, 2019 U.S. Dist. LEXIS 168141, at *14 (W.D. Pa. Sep. 30, 2019) ("the first-to-file doctrine…does not apply…to simply exclude certain plaintiffs from a class…").

22

Finally, even if the first-filed rule had applied to this motion (it does not), district courts have the discretion to dispense with the first-to-file rule where equity so demands. *Hernandez v. Cracker Barrel Old Country Store, Inc.*, No. 8:14-cv-1902-T-33AEP, 2014 U.S. Dist. LEXIS 146356, at *4-5 (M.D. Fla. Oct. 14, 2014) (denying dismissal of store manager misclassification case despite pending action previously filed in New York district court) (citations omitted). Thus, courts have frequently allowed FLSA collective actions to proceed in one court despite prior pending collective actions in another district. *See, e.g., Ingram v. Pfizer, Inc.*, No. 6:10-cv-0459-Orl-GAP-GJK, 2010 U.S. Dist. LEXIS 153973 (M.D. Fla. July 19, 2010) (declining to transfer collective action to district where three previously filed collective actions were pending). Again, no certified collective is currently pending.

Certification of this focused collective action will provide notice to putative opt-ins more expeditiously, while the applicable statute of limitations continues to run against their claims. This is particularly important where the instant motion for conditional certification is more likely to result in prompt notice because it is not vulnerable to the same defenses and opposition (that named Plaintiffs sought to certify departments they never worked in, and continue to seek to certify ADM positions they never held) as the motion(s) filed in *Walton. See generally Vargas v. HSBC Bank USA, N.A.*, 2012 U.S. Dist. LEXIS 113993, at *11 (S.D.N.Y. Aug. 9, 2012) (denying conditional certification where "[t]he proposed collective includes employees working under three titles Plaintiff has never held.").

Finally, conditional certification of this collective action will not bar the

*Walton* plaintiffs from pursuing their individual claims in that case.

## III.  THE COURT SHOULD ORDER PRODUCTION OF THE COLLECTIVE LIST AND ISSUANCE OF NOTICE

Plaintiffs submit proposed Notice and Consent forms (see Ex. A) that contain provisions substantially similar to notices approved in this district,[37] and request approval of the notice procedures that courts in this district similarly and routinely approve: mailed and emailed notice,[38] with a 60-day opt-in period, and reminder mailed and emailed notice at the midpoint.[39] In order to distinguish the notice communication from junk mail, the Court should also authorize the notice delivery envelope[40] and email subject line to state:

> **Notice of Unpaid Overtime Lawsuit, Aiuto et al. v. Publix**
> **Civil Action No. 1:19-cv-04803-LMM**
> **Deadline to Join**

The Court should also approve submission of electronically signed Consents

---

[37] *See, e.g., Weinstein v. 440 Corp.*, No. 2:19-cv-105-RWS, 2019 U.S. Dist. LEXIS 190678 (N.D. Ga. Nov. 4, 2019); *Florence*, 2019 U.S. Dist. LEXIS 4379, at *8-9.
[38] *See, e.g., Florence*, 2019 U.S. Dist. LEXIS 4379, at *9 (approving notice by email and U.S. Mail over defendant's opposition). Likely due to embedded hyperlinks, emailed Notices often land in junk/spam folders. *See, e.g., Weckesser v. Knight Enters. S.E., LLC*, No. 2:16-cv-02053-RMG, 2019 U.S. Dist. LEXIS 14716, at *3 (D.S.C. Jan. 28, 2019). To remedy that, the Administrator should be allowed to immediately follow emailed notice with the proposed brief email (with no hyperlinks) alerting recipients to check their junk/spam folders for the notice.
[39] *Florence*, 2019 U.S. Dist. LEXIS 4379, at *9-11 (60 day period with reminder by same notices at midpoint); *Miller*, 2014 U.S. Dist. LEXIS 200077, at *17 (same).
[40] *Florence*, 2019 U.S. Dist. LEXIS 4379, at *10 (approving that exact envelope and email subject line text); *Page v. Hertz Corp.*, No. 1:12-cv-1965-WSD, 2013 U.S. Dist. LEXIS 75387, at *20 (N.D. Ga. May 29, 2013) (approving same text).

directly through an online portal on the Notice Administrator's website. *See, e.g., Florence*, 2019 U.S. Dist. LEXIS 4379, at *10 (approving notice "website with an online portal that allows for the submission of electronically-signed consents"); accord *Sellers v. Sage Software, Inc.*, No. 1:17-CV-03614-ELR, 2018 U.S. Dist. LEXIS 188420, at *15-16 (N.D. Ga. May 25, 2018).

Finally, if past is prologue and Publix has again held meetings with uncounseled putative opt-ins (usually current employees dependent on Publix for employment income) and obtained their written statements prior to Court-authorized notice as it has done before in opposing certification in *Ott*,[41] those individuals will likely be confused as to whether they are still allowed to join this collective action, and the Court should exercise its broad discretion to craft appropriate Notice by informing them that they have not waived their right to join. Thus, if Publix obtained written statements from putative DM opt-ins, Plaintiffs request additional Notice language similar to what Judge Totenberg ordered[42] when a defendant held meetings and obtained putative opt-in statements prior to Court-authorized Notice.

---

[41] *See* Declarations obtained by Publix from 10 current employee putative opt-ins prior to Court-approved Notice filed with its opposition to conditional certification in *Ott*, [Doc. Nos. 69-78].

[42] *Prowant v. Fannie Mae*, No. 1:14-CV-3799-AT, 2017 U.S. Dist. LEXIS 221422, at *23 (N.D. Ga. Oct. 16, 2017) ("You are allowed to join this lawsuit even if you met with [Defendant]'s attorneys when they came to [Defendant]'s office and interviewed you about overtime or the claims at issue in this case. If you have any questions as to whether any statements you made or information you gave will affect your potential claims in this lawsuit, you may obtain legal advice by contacting Plaintiffs' counsel as listed below or other counsel of your choosing.").

*/s/ C. Andrew Head*
C. Andrew Head, Ga. Bar No. 341472
Bethany Hilbert (admitted *pro hac vice*)
HEAD LAW FIRM, LLC
4422 N. Ravenswood Ave.
Chicago, IL 60640
T: (404) 924-4151
F: (404) 796-7338
ahead@headlawfirm.com
bhilbert@headlawfirm.com

David Hughes (admitted *pro hac vice*)
HARDIN & HUGHES, LLP
2121 14th Street
Tuscaloosa, AL 35401
T: (205) 523-0463
F: (205) 344-6188
Email: dhughes@hardinhughes.com

Attorneys for Plaintiffs and the Collective

## **CERTIFICATE OF COMPLIANCE**

I certify this document was prepared in compliance with LR 7.1, NDGa.  This

document was prepared in Times New Roman 14-point font.

*s/ C. Andrew Head*
Counsel for Plaintiffs

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of this Court using the CM/ECF system which sent notification of such filing to all counsel of record this 20th day of November, 2019.

*s/ C. Andrew Head*
Counsel for Plaintiffs