# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| AUDENZIO AIUTO, NATHANIEL PALMER, and CHENZERIA WRIGHT, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE NO. 1:19-CV-4803-LMM |
| v. | ) ) | |
| PUBLIX SUPER MARKETS, INC., | ) ) | |
| Defendant. | ) | |

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION

This Fair Labor Standards Act misclassification case isn't unique or even first-filed in this Court. *Walton v. Publix*, No. 1:19-cv-4466 came a few weeks before this case, makes the same claims, and involves largely the same putative collective. Both cases overreach in quest of undeserved financial gain.

That overreach is most evident from Plaintiffs' attempt to shoehorn out-of-state party plaintiffs—about 85% of the proposed collective—under this Court's jurisdiction. It also appears in Plaintiffs' Nile-wide collective definition and the superficial arguments—none of which have purchase—that Plaintiffs press to unify the disparate alleged members of that putative group.

First, at least 10 opt-ins, and every other current or former employee of Defendant Publix Super Markets, Inc., who worked for Publix outside of Georgia, cannot establish personal jurisdiction over Publix as to their claims. The ineligibility of so many putative collective members renders collective proceedings inappropriate.

Second, Plaintiffs fail to establish that they are similarly situated to the putative collective of Publix Department Managers they seek to represent. Neither these managers' exempt classification , nor their reclassification to non-exempt can alone show the similarity that the FLSA requires.

Third, Plaintiffs cannot establish that Publix subjected them to an unlawful policy. At best, they contend that Publix consistently applied policies and practices company-wide, as well as centralized human resource and compensation functions. Neither centralization nor the use of consistent policies, however, makes otherwise *lawful* policies or practices unlawful, and Plaintiffs have presented no proof of anything otherwise violating the FLSA. In their race to beat the *Walton* plaintiffs to a hoped for exorbitant settlement, Plaintiffs here fall short. Particularly because the overlap of this case and *Walton* creates confusion that could force settlement where merits would not, this Court should deny Plaintiffs' motion for conditional certification.

## I. BACKGROUND

### A. Publix Super Markets, Inc. – An Overview

Publix is an employee-owned supermarket chain that operates 1,241 stores across Georgia, Florida, Alabama, North Carolina, South Carolina, Tennessee, and Virginia. (Company Overview – Facts & Figures, *available at* https://corporate.publix.com/about-publix/company-overview/facts-figures) (last visited December 18, 2019 ("Company Overview"). 187 of Publix's locations are in Georgia, while Florida holds 808, almost two-thirds of Publix's locations. (*See* Company Overview). Publix's headquarters and principal place of business are in Lakeland, Florida. (Decl. of Erin King at ¶ 4, attached as Ex. A).

Generally, each Publix store contains, and contained during the relevant time period, six departments, three of which are the Bakery, Meat, and Deli Departments, each of which has a manager.[1] (Decl. of Jasmin Ovcina at ¶ 7, attached as Ex. B). Publix's store formats vary for many reasons. Geography, demography, and market size all influence the size, layout, and stocked inventory at a given store. (Decl. of Bruce Humphries at ¶ 9, attached as Ex. C). Those differences can change how work within a store is performed. (*Id.* at ¶ 10). The

---

[1] On March 30, 2019, Publix reclassified all Department Managers, including Bakery, Meat, and Deli Managers, from exempt to non-exempt. (King Decl. at ¶ 13).

influence also flows to the way work is performed in individual store departments. (*Id.* at ¶ 10). Higher sales volume, for instance, leads to more customer interactions, which in turn requires department managers in high volume locations to devote more time to managing Associates' customer service skills than in lower volume stores. (*Id.* at ¶ 11). In sum, each Publix store differs from its sister stores based on a variety of factors notwithstanding the uniform delivery of customer service excellence.

**B.    Differences Exist Between Deli, Meat, and Bakery Departments and Their Managers**

How Bakery, Deli, and Meat Departments operated from store to store during the relevant time period varied significantly. Higher sales volume stores naturally required that managers devote more attention to ensuring their Associates attend to customer needs rapidly, while still following Publix's operational requirements for the department. (Humphries Decl. at ¶ 11). Higher sales volumes also required more Associates to staff each department, which in turn required more personnel management and less production assistance from managers. (Decl. of Greg Switzer at ¶ 3, attached as Ex. D; Decl. of Andrew McGee at ¶ 3, attached as Ex. E; Decl. of Mike Thelen at ¶¶ 2-3, attached as Ex. F).

The nature of the departments created inter-departmental variation, too. (*See* Decl. of Brian DaCamara at ¶ 8, attached as Ex. G). The work necessary in a Bakery was meticulous and involved processes that could generate, by their very nature, more production hours than did the types of work done in the Deli. (Humphries Decl. at ¶ 15). Deli Departments generally had more tasks to complete, including more face-to-face customer interaction and on-demand requests, because of the hectic nature of the department. (McGee Decl. at ¶ 11). And Meat Departments "perform different functions and work" than either Bakeries or Delis. (DaCamara Decl. at ¶ 8).

The departments also varied during the relevant time period by product they offered to the Publix customer. With different products came different processes, different oversight requirements, and different ordering requirements. (Humphries Decl. at ¶ 14; DaCamara Decl. at ¶ 8). Regardless of store volume, Deli Departments tended to have three to four times as many associates, so staffing and labor management practices differed as compared to Bakery and Meat Departments. (Humphries Decl. at ¶ 14).

With that substantial amount of departmental variation, it is no surprise that Bakery, Meat, and Deli Department Manager positions differed as well. [2]  In one store, Department Managers, prior to their reclassification in March 2019, had ample authority in hiring, promotion, discipline, and termination decisions in their department.  (McGee Decl. at ¶ 14).  In another, the store manager afforded the Bakery Manager more discretion than the Deli Manager because the former demonstrated particularly astute judgment, or had more experience.  (Decl. of Diane Hernandez at ¶ 12, attached as Ex. H; *see also* McGee Decl. at ¶ 18).  Managers, of course, also differed in their management styles, which affected the way they perform their jobs on a day-to-day basis.  (King Decl. at ¶ 12; DaCamara Decl. at ¶ 10); *compare* Decl. of Daniel Gueguen at ¶ 19, attached as Ex. I, *with* Hernandez Decl. at ¶¶ 8-11).

To manage these abundant differences efficiently, Publix store managers and district managers empowered those beneath them to perform adaptive management.  (Ovcina Decl. at ¶ 16-17).  Department Managers who wanted to focus on training and developing associates beneath him or her, for example, were

---

[2] Plaintiffs presumptuously include in one collective action three distinct management roles.  No doubt they do so in an effort to compete with the first-filed *Walton*, in which the plaintiffs have sought—also unjustifiably—to represent at least two.

allowed to do so. (Ovcina Decl. at ¶ 16). Managers were even allowed to develop their own training protocols and curriculum that suit their particular store and department. (Ovcina Decl. at ¶ 17).

### C. This Lawsuit

Three weeks after the *Walton* plaintiffs filed suit, three named plaintiffs and 31 other current and former Deli, Meat, and Bakery Department Managers pled essentially the same claims against Publix as did the plaintiffs in *Walton*. The *Aiuto* plaintiffs, as in *Walton*, seek to represent a nationwide collective. (*See* Doc. 1). Because Publix has 187 stores in Georgia out of 1239 total, Department Managers who worked for Publix in the state comprise only about 15% of that putative collective.

That split is not theoretical. Of the fifteen Department Managers who submitted declarations in support of conditional certification, ten work or worked for Publix outside of Georgia during the relevant time period. (*See* Doc. 18-3).[3] They also did not live in Georgia. And, by every declarants' own admission, Publix did not pay them from Georgia. (*See, e.g.*, Doc. 18-3 at 35 ("Publix corporate

_____

[3] Those ten are opt-in plaintiffs Wendy Bauer, Christine Bruce, Brenda Fields, Mary Hall, Valarie Holton, Ria Horstman, Mary Hovell, Donald Jefferson, Allen Octavien, Glen Storm, and Monica Thompson. (*See* Doc. 18-3).

office personnel handle payroll . . . ."); King Decl. at ¶ 4).  In other words, those ten opt-ins—and the 85% of the collective Plaintiffs' seek to represent that —press claims for overtime wages that have no relationship to Georgia.

## II.    ARGUMENT

Conditional certification of a collective is inappropriate for three reasons. First, 85% of the proposed collective's claims do not relate to Publix's contacts with or conduct in Georgia.  This Court thus lacks personal jurisdiction over Publix as to those claims.  Second, Plaintiffs fail to establish that they are similarly situated to the Department Managers they seek to represent.  Third, Plaintiffs establish no unlawful policy that led to their alleged FLSA violations.   All three reasons independently justify the denial of conditional certification.

### A.    Collective Certification Standard

Under § 216(b), one or more employees may sue for alleged violations of overtime regulations "for and in behalf of himself or themselves and other employees similarly situated."  The phrase "similarly situated" has spawned a two-stage procedural schematic—conditional certification and decertification—to answer the question of who qualifies.  Because the certification process is judge-made, courts must conditionally certify a collective only "in appropriate cases."

*Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989); *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1111 (11th Cir. 1996).

At that first stage, Plaintiffs, *not Publix*, must establish that: (1) they are "similarly situated" to the putative class members they seek to represent; and (2) a sufficient number of those individuals wish to join this case. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001); *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991). Where enough record evidence clarifies that notice is inappropriate, courts can refuse to conditionally certify a collective. *See, e.g., Brooks v. BellSouth Telecomms., Inc.*, No. 1:07-CV-3054-ODE, 2009 WL 10699685, at *7-8 (N.D. Ga. Feb. 10, 2009).

Plaintiffs describe their burden as "very low," and "particularly low" in this circuit (Doc. 9 at 15-16), but in reality it is "low" only as compared to the burden at decertification. *See Webber v. Coast Dental*, No. 8:12-cv-01505, 2013 WL 935772, at *3 (M.D. Fla. Mar. 11, 2013 ("[C]onditional certification should 'be exercised with discretion and only in appropriate cases.'") (citing *Haynes v. Singer Co., Inc.*, 696 F.2d 884 (11th Cir. 1983)). As this Court has explained, "[w]here plaintiffs seek to send court-approved notice . . . courts should treat those requests with a higher level of scrutiny." *Brooks*, 2009 WL 10699685, at *5.

Properly scrutinizing Plaintiffs' request reveals (1) a lack of jurisdiction over 85% of the claims in Plaintiffs' putative collective, and (2) for the remaining 15% of all Deli, Meat, and Bakery Department Managers, Plaintiffs cannot demonstrate that those managers are similarly situated, or that any of the putative collective members were subjected to an unlawful policy or procedure.

**B.      Conditional Certification Is Improper Because No Personal Jurisdiction Exists Over Publix as to Claims by Plaintiffs Who Lived and Worked Outside of Georgia**

As explained in Publix's Motion to Dismiss in *Walton* (No. 1:19-cv-4466, Doc. 29), FLSA opt-in plaintiffs, like Wendy Bauer and her nine out-of-state opt-in declarant colleagues, have party plaintiff status. *Walton*, Doc. 29. As party plaintiffs, their claims must satisfy the same jurisdictional questions as named parties. That means that each opt-in must establish personal jurisdiction over Publix as to his or her claims. Bauer and her compatriots, however, cannot because they worked for and were paid by Publix outside of Georgia. Including those plaintiffs—who comprise 85% of the putative collective Plaintiffs seek to represent—in any collective thus violates Publix's due process rights.

This Court's decision in *Dennis v. IDT Corp.*, 343 F. Supp. 3d 1363 (N.D. Ga. 2018), bolsters this analysis. There, Erik Dennis pursued a Telephone Consumer Protection Act class action under Rule 23, and IDT argued that *Bristol-Myers Squibb*

*Co. v. Superior Ct. of Cali., San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017), barred personal jurisdiction over claims of non-resident unnamed class members. *Dennis*, 343 F. Supp. 3d at 1364. Disagreeing, this Court reasoned that (1) Rule 23's due process protections, (2) the impracticality of analyzing personal jurisdiction for absent class members, and (3) the absence of federalism concerns justified declining to extend *Bristol-Myers*. *Dennis*, 343 F. Supp. 3d at 1366-67.

No rule-based due process protections exist here. As this Court recognized, mass actions, like this putative FLSA collective, do not "ensure . . . a unitary coherent claim" and thus afford no "unitary, coherent defense." *Id.* at 1366. Indeed, Publix has already asserted defenses that would apply to some Plaintiffs and opt-in plaintiffs, but possibly not all. Those same defenses justify not proceeding collectively . *See Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007) (noting that courts considering whether to decertify look at, among other things, "the various defenses available to defendants that appear to be individual to each plaintiff") (cleaned up). What's more, each opt-in plaintiff, even if "similarly situated," presents potential differences in claim proof, near certain differences in damages proof (everyone worked different days and different numbers of hours), and variations in fact-based defenses depending on job duties that vary from person to person.

Practical concerns like those in *Dennis* also do not exist. As "[i]n mass tort actions," in FLSA collectives "each plaintiff"--opt-ins and named plaintiffs--are "real part[ies] in interest." *Dennis*, 343 F. Supp. 3d at 1366; *see also Mickles v. Country Club, Inc.*, 887 F.3d 1270, 1273 (11th Cir. 2018); *Prickett v. DeKalb Cty.*, 349 F.3d 1294, 1297 (11th Cir. 2013) (holding that party plaintiffs have the status in relation to claims in the suit as named plaintiffs). Because of the nature of the claims here—alleged failure to pay overtime wages due—this Court need only ask where an opt-in plaintiff worked for Publix and from where their pay originated to determine if personal jurisdiction exists. That information, unlike an unknown class member's contacts with the forum, *see Dennis*, 343 F. Supp. 3d at 1366, is easily ascertainable based on Publix's own records. Even if it was not, the binary nature of the inquiry here—the opt-in either worked and was paid in Georgia, or not— eliminates the impracticality concerns present when applying *Bristol-Myers* to Rule 23 classes. *See Dennis*, 343 F. Supp. 3d at 1366.

The presence or lack of "federalism concerns" that animated *Bristol-Myers*, and partially underlay *Dennis*, has no bearing on the personal jurisdiction analysis applicable in federal question mass actions like this case. Due process under the Fifth Amendment requires a minimum contacts analysis just like the Fourteenth Amendment requires in state court in federal question cases where the statute at

issue lacks a nationwide service provision. *See* Fed. R. Civ. P. 4(k); *see also Walton*, Doc. 29 at 12. Under the circumstances this case presents, then, a lack of federalism concerns is neither here nor there when it comes to analyzing personal jurisdiction—the analysis is the same regardless.

Because this Court lacks personal jurisdiction over Bauer and other out-of-state opt-ins, certifying a nationwide collective that includes those people would violate Publix's due process rights. *See Bristol-Meyers*, 137 S. Ct. at 1780; *see also id.* (holding that the "primary concern" in the personal jurisdiction inquiry is "the burden on the defendant"). Publix operates 1,239 stores across seven southeastern states, only 187 of which are in Georgia. That means this Court lacks personal jurisdiction over about 85% of Publix's Deli, Meat, and Bakery Managers whom Plaintiffs want to represent as opt-in party plaintiffs.

Certifying a nationwide collective under those circumstances would create practical problems, too. If this Court certifies the collective that Plaintiffs request, about 85% of notice recipients would believe they could join this lawsuit, but likely not realize that this Court lacks authority to adjudicate their potential claims. Any opt-in consent forms filed by that 85% would each be subject to an immediate motion to dismiss under Fed. R. Civ. P. 12(b)(2). Resolving a large number of such motions piecemeal creates inefficiency, while declining certification now based on

*Bristol-Myers* precludes that ever arising.[4]  Regardless, due process demands that claims lacking connection to Publix's Georgia operations not be artificially and temporarily given life by sending their holders notice of this lawsuit.  Plaintiffs' conditional certification motion should thus be denied.

C. **Plaintiffs Fail to Establish Substantial Similarity Because Bakery, Deli, and Meat Department Managers Are Distinct From One Another**

Notwithstanding the overwhelming jurisdictional issues created by Plaintiffs' proposed collective, Plaintiffs also fail to establish that they are similarly situated.  *See* 29 U.S.C. ¶ 216(b).  Although Department Managers indeed shared the ability to independently manage their departments and employees (*See, e.g.* Ovcina Decl. at ¶ 17; Humphries Decl. at 16-23), that similarity of independence does not justify collective proceedings.

To show similarity, Plaintiffs present a largely boilerplate declaration signed by 15 different current and former Deli, Meat, and Bakery Managers.  (Doc. 18-3).  They conclusorily allege that all Department Managers share job duties and

---

[4] If Plaintiffs ever contest Publix's assertion that a particular opt-in plaintiff neither worked nor lived in Georgia, it will remain Plaintiffs' burden—not Publix's—to present or seek evidence refuting such an assertion.  *See Louis Vuitton v. Joseph Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013).  Satisfying that burden itself would lead to numerous individualized factual determinations antithetical to collective proceedings.

responsibilities; were classified as exempt and not paid for overtime hours worked; and were "similarly affected" by that classification decision. (*See* Doc. 18-3 at ¶ 6). Plaintiffs also allege that they had to speak with customers frequently, had to work overtime to complete assigned tasks, that Publix discouraged overtime for hourly associates, that Publix centrally controls training, pay, purchasing, and other corporate tasks, and that Plaintiffs did not "feel" like managers. (*See, e.g.*, Doc. 18-3 at ¶¶ 8-13). Even taken as true, those "facts" are not a complete picture of what life is like as a Publix Department Manager.

        1.    *Bakery, Deli, and Meat Department Managers were not similarly situated from store to store*

A Deli Manager in Atlanta and a Meat Manager in Sandy Springs might hold the same title and work in the same department as their counterparts in Savannah and Columbus, but their jobs were anything but similar. For one, different stores sell more or less product than others. The more sales a store had, the more employees it had, something that was true in the Bakery, Deli, and Meat Departments. (See Decl. of Deidre Harris at ¶¶ 4-5, attached as Ex. J; DaCamara Decl. at ¶ 11). More employees meant more time spent managing the Associates whom the Department Managers supervised, whether that was coaching their performance, scheduling their hours, conducting first tier interviews of new hires,

or disciplining associates when appropriate. (Harris Decl. at ¶ 10; Humphries Decl. at ¶¶ 11, 14; Decl. of Dave Tawney at ¶ 7, attached as Ex. K (sales volume variance and number of associates managed "can directly impact how an individual Department Manager manages his or her department")).

Larger work forces also led to greater associate specialization, which itself required that associates "be managed differently." (Tawney Decl. at ¶ 8). Further, volume differences influenced customer interactions—the more volume, the more interaction. (Humphries Decl. at ¶ 11). Regardless of the distinct focus and responsibilities that each type of department required, Department Managers faced with more customers managed their associates differently than those at slower stores who could devote more time to, for example, display planning, specialist training, and operational efficiencies. (Humphries Decl. at ¶ 11).

Store locations also meaningfully differentiated Department Managers at one store from their counterparts at another. Location, and the associated customer demographics, influenced product selection at a given store, which led to different inventory requirements for managers. (Switzer Decl. at ¶ 10, attached as Ex. J; Thelen Decl. at ¶ 6). Location-based clientele differences also created different customer demands, which created different duties for customers.

Upscale location customers, for instance, required more time and demanded more than other areas. (Switzer Decl. at ¶ 10).

The tenure and experience of one store's associates accentuated another differentiator. More experienced associates needed less training and coaching, while greener ones required more managerial time and, "in some instances," more discipline. (Humphries Decl. at ¶ 12; Thelen Decl. at ¶ 10). In other words, a Department Manager at a high volume store with a large team of rookies had radically different job duties than a the manager with the same title at a smaller store with more experienced team members. The former thus was not similarly situated to the latter.

2.     *Bakery, Deli, and Meat Managers are not similarly situated to each other*

Just as differences existed within Deli, Meat, and Bakery Department Manager cohorts, so did they exist between the Deli, Meat Department, and Bakery. Those differences began with the products each presents to Publix customers. Deli Departments sold meats and hot cooked food, Bakeries unsurprisingly sold baked goods, and Meat Departments sold meat, seafood, cheese, pasta, and hot dogs. (McGee Decl. ¶¶ 7, 10; Thelen Decl. at ¶ 4). Those different products in turn led to different customer purchase patterns (Delis are

far busier than Bakeries; Meat Departments sell more product than either), different amounts of customer interaction, different production needs, and different managerial processes, oversight, and ordering requirements. (Humphries Decl. at ¶ 14).

Those differences spawned other, different, requirements of managers. Deli Department Managers generally had more tasks to complete than Bakery Managers and spent more time addressing customer demands. (McGee Decl. at ¶ 11; Hernandez Decl. at ¶ 11). Delis, because of their greater sales volume, also required their managers to spend more time managing inventory than did Bakeries. (Tawney Decl. at ¶ 7). The distinctions compounded when Meat Departments are factored in—they were responsible for greater product variety than either Bakery or Deli.

Meat Departments—once again depending on store location—also were sometimes spread out across the store. (Thelen Decl. at ¶ 4). Delis and Bakeries were not. The disparate locations within a single store changed how Meat Departments operated compared to Delis and Bakeries. (Thelen Decl. at ¶ 4).

Bakeries' different production needs, and their smaller work forces, likewise differentiated their managers from Deli and Meat Department Managers. In the Deli, managers spent more time training customer service, as well as safety

protocols imposed by various state and local health departments. (McGee Decl. at ¶ 9). Bakery Managers, on the other hand, spent more time "overseeing meticulous and involved processes." (Humphries Decl. at ¶ 15). Meat Departments contained production *and* customer service facing positions. (*See* Thelen Decl. at ¶¶ 4, 10).

At bottom, it is a matter of common sense, confirmed by Publix's evidence, that a Bakery Department Manager performs different duties than a Deli Department Manager, neither of whom performs the same work as a Meat Department Manager. Associates in one role should not be lumped into a collective with associates in the other, as those in one are not similarly situated to those in the other with respect to the duties that they perform. Indeed, "[n]o two managers are going to do things the same way." (Hernandez Decl. at ¶ 16). Conditional certification of Plaintiffs' proposed collective thus is inappropriate.

### D. Plaintiffs Fail to Show a Common and Unlawful Policy or Plan That Binds the Proposed Collective

Plaintiffs bear the burden of showing that they and their proposed collective suffered under a common policy or plan that violates the FLSA. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996). Their failure to do so, like their failure to show substantial similarity to the proposed collective, counsels denying conditional certification.

The focus in an exempt misclassification lawsuit like this case must be on "actual job duties of those in that job category to determine whether they are similarly situated." *In re Family Dollar FLSA Litig.*, 637 F.3d 508, 518 (4th Cir. 2011) (citation omitted); *see also Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (reasoning that mere existence of common exempt designation is insufficient to show that employees are similarly situated). Merely being classified as exempt does not violate the FLSA and, thus, cannot bind a collective. Indeed, the FLSA contains several relevant exemptions that, if applicable, themselves justify company-wide classification schemes. *See* 29 U.S.C. § 213(a)(1). There must be something more, and that something more must be unlawful *and* common to the entire proposed collective.

Just as mere exempt classification cannot by itself show similarity, neither can reclassification from exempt to non-exempt, as happened here. *See Henry v. Express Scripts Holding Co.*, No. 14-2979, 2015 WL 790581, at *1 (D.N.J Feb. 24, 2015) ("Reclassification, alone, does not evidence a FLSA violation."). In *Henry*, the defendant reclassified some employees to non-exempt without reviewing their job duties actually performed and without paying back overtime wages. *Id.* "Th[o]se facts," said the court, fell short of the "modest factual showing" required for conditional certification because "nothing about" them suggested that the

"reclassified employees were victims of a common policy or plan that evaded the law." *Id.* So, too, here.

Further, Plaintiffs' lengthy exposition on the virtues of Publix's well-run business is, at best, odd. Many pages of Plaintiffs' conditional certification motion describe their idiosyncratic, biased view of Publix as a business that has developed uniform employee handbooks, systems for ensuring it provides excellent and consistent customer service across its stores, and payroll and human resources functions that it centralizes at its headquarters in Florida. (*See* Doc. 18 at 22).

It is far from true, however, that an employer's development and adoption of thoughtful, centralized business and employment practices is the *sine qua non* of an FLSA collective action. *See e.g., Donovan v. Burger King Corp.*, 675 F.2d 516, 522 (2d Cir. 1982) (recognizing that uniform policies "seek[] to limit likely mistakes in judgment," but that "judgments must still be made" and thus that uniformity does not preclude overtime exemption); *see also Gilliam v. Montgomery Ward & Co.*, 121 F.3d 698, 1997 WL 429454, at *7 (4th Cir. 1997) (unpublished) (existence of uniform policies did not render overtime exemption per se unreasonable); *Murray v. Stuckey's, Inc.*, 50 F.3d 564, 569-70 (8th Cir. 1995) (rejecting argument that existence of company policies and guidelines for store manager circumscribed discretion so

as to render him non-exempt).[5]  If it were, then conditional certification would necessarily be granted in any case involving a well-run business, and without regard to the similarly situated standard that this Court knows must be applied. Plaintiffs' odd suggestion to the contrary is a red-herring that adds volume, but little else, to the unjustified motion they advance.

E.    **The Overlap of** *Aiuto* **and** *Walton* **Creates Potential Confusion, Costs, and Burdens that Might Force Settlement When Their Merits Would Not**

This case and *Walton* press the same claims for basically the same putative collective (*Walton*'s shifting definition makes it hard to define the precise contours of the collective there).  That almost complete overlap causes two distinct problems

---

[5]  This Court, too, has rejected uniform policies arguments similar to Plaintiffs'. *See Lovett v. SJAC Fulton Ind I, LLC*, No. 1:14-cv-983-WSD, 2015 WL 3889719, at *12-14 (N.D. Ga. June 23, 2015) (finding policies and procedures evidence about job duties insufficient to demonstrate that assistant managers were similarly situated in light of defendant's evidence that variations existed among the duties assistant managers actually performed); *see also Pickering v. Lorillard Tobacco Co.*, No. 2:10-CV-633-WKW [WO], 2012 WL 314691, at *12 (M.D. Ala. Jan. 30, 2012) ("[A] standardized job description is insufficient to justify a nationwide collective action based upon a claim that the employer improperly classified a category of employees as exempt . . . . Rather, the court . . . must analyze the nature of each employee's job duties, and the degree to which evidence regarding the plaintiffs' job duties can be applied to all other employees.").

should this Court decide to conditionally certify collectives.[6]  Both problems

warrant protective measures.

For one thing, these cases proceeding simultaneously would confuse

potential opt-in plaintiffs.  It's not hard to imagine Publix employees, if both cases

are conditionally certified, receiving notice of both and wondering which one to

join, if any, or whether joining one but not the other would prejudice their rights.

Without guardrails on the notice process (if this Court allows certification in either

case), confusion could run rampant.

Two of the same conditionally certified case also imposes double costs and

burdens on Publix.  That's twice the discovery, twice the motions practice (as the

two responses to conditional certification Publix will submit in the next three days

illustrates so well), and, if confusion reigns, twice the claims, even for the same

plaintiffs.  Double the costs *might* be palatable if Publix faced double the risk, but

it doesn't.  No plaintiff can double recover, whatever case they join.  Yet Publix

---

[6] Plaintiffs denigrate the *Walton* plaintiffs' motion for conditional certification. Although it does not object to those aspersions, Publix's opposition to that motion, due two days after this one is filed, highlights why conditional certification is improper there.  Plaintiffs here, however, should not be forgiven their attempt to glom onto the relief that the *Walton* plaintiff strived to achieve first.  As the plaintiffs' claim to collective action in *Walton* should fail, so should the claims of these late-coming copycats fail.  The best guardrail against the confusion and burden that two conditionally certified collective actions might create is the denial of conditional certification in both.

stands to nevertheless absorb double the costs of litigating what it considers a lawful business decision.

If these cases are conditionally certified, the parties likely cannot alone mitigate these risks, particularly the risk of confusion. If both cases are to proceed (neither should), Court generated protective measures will almost certainly be necessary to avoid one or both actions running off the rails.

F. **Plaintiffs' Proposed Notice and Process for Distribution Should Be Rejected**

Plaintiffs include with their certification motion a draft notice and proposed distribution plan for use in sending notice to the putative collective. (*See* Doc. 19-2). Plaintiffs want to mail notice. They want to email notice. They want to send a second email telling people about the first email. Then they want to do all that over again half way through a 60 day notice period.

Problems abound with what Plaintiffs propose. Publix objects to, among other things, the vague substance of the notice, the confusion it would cause as drafted, and the means by which Plaintiffs would distribute the notice, namely by email rather than simply by the preferred method of U.S. Mail. Publix also objects to Plaintiffs harassing potential class members by sending them upwards of six different communications over the first 30 days of the notice period. To resolve

these objections, Publix requests that, in the event this Court conditionally certifies an FLSA collective of any scope, the parties be given twenty-one days to confer about and present, if possible, a jointly proposed notice and notice distribution process, after which appropriately limited contact information for the class that this Court defines would be due for exchange within thirty days.

## III. CONCLUSION

For these reasons, Publix asks this Court to deny Plaintiffs' motion for conditional certification.

Date: December 18, 2019

Respectfully submitted,

SEYFARTH SHAW LLP

By s/ Brett C. Bartlett
    Brett C. Bartlett
    Georgia Bar No. 040510
    Lennon B. Haas
    Georgia Bar No. 158533
    SEYFARTH SHAW LLP
    1075 Peachtree St. NE, Suite 2500
    Atlanta, Georgia 30309-3958
    Telephone: (404) 885-1500
    bbartlett@seyfarth.com
    lhaas@seyfarth.com

    COUNSEL FOR DEFENDANT PUBLIX SUPER MARKETS, INC.

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

AUDENZIO AIUTO, NATHANIEL )
PALMER, and CHENZERIA WRIGHT, )
on behalf of themselves and all others )
similarly situated, )
                            )
      Plaintiffs, )      CIVIL ACTION FILE NO.
                            )      1:19-CV-4803-LMM
v. )
                            )
PUBLIX SUPER MARKETS, INC, )
                            )
      Defendant. )

## CERTIFICATE OF SERVICE

I certify that on December 18, 2019, I electronically filed this Response in Opposition to Plaintiffs' Motion for Conditional Certification using the CM/ECF system, which will automatically send email notification of this filing to all counsel of record.

## LOCAL RULE 7.1(D) CERTIFICATION

I certify that this Response in Opposition to Plaintiffs' Motion for Conditional Certification has been prepared in Book Antiqua 13-point font as approved by Local Rule 5.1(B).

s/ Brett C. Bartlett
Counsel for Defendant